# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**BRANDON MILLIGAN,**

      **Plaintiff,**

v.   Case No:  6:16-cv-1889-Orl-28DCI

**STATE FARM MUTUAL**
**AUTOMOBILE INSURANCE**
**COMPANY,**

      **Defendant/Third Party Plaintiff,**

v.

**FLETCHER HOSPITAL, INC. and**
**MICHAEL J. ROSNER, M.D.,**

      **Third Party Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **THIRD-PARTY DEFENDANT FLETCHER HOSPITAL, INC.'S MOTION TO DISMISS AMENDED THIRD PARTY-COMPLAINT (Doc. 62)** |
| **FILED:** | **March 7, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part as moot**.

I.      Background

   A.  Factual History

This case stems from an automobile accident that occurred in July 2014 between Brandon Milligan and an uninsured/underinsured motorist. Doc. 2 at ¶ 2. Mr. Milligan suffered physical injuries as a result of the accident and, consequently, sought medical treatment following the accident. Docs. 2 at ¶ 3; 48 at ¶ 14.

Specifically, Mr. Milligan began treating with Dr. Michael Rosner, a neurosurgeon licensed to practice medicine in North Carolina. Doc. 48 at ¶¶ 15-16. Dr. Rosner specialized in performing a "fairly controversial" decompression surgery used to treat Chiari malformations. *Id*. at ¶ 20.[1] Dr. Rosner applied for and was granted privileges to perform this surgery at a hospital owned and operated by Fletcher Hospital, Inc. d/b/a Park Ridge Hospital (Park Ridge), which is located and incorporated in North Carolina. *Id*. at ¶¶ 4, 20-21. Dr. Rosner's medical license was suspended several times before he treated Mr. Milligan. *Id*. at ¶¶ 26, 30, 34. The suspensions were imposed after Dr. Rosner was found to have performed unnecessary surgeries, including decompression surgeries. *Id*. Park Ridge was aware of each suspension and revoked Dr. Rosner's privileges while the suspensions were in effect. *Id*. at ¶¶ 27, 31, 35. Park Ridge, though, granted Dr. Rosner privileges to perform the decompression surgery at its facility after each suspension was lifted. *Id*. at ¶¶ 29, 33, 37.

Dr. Rosner diagnosed Mr. Milligan with a Chiari malformation, which Dr. Rosner attributed to the subject accident. *Id*. at ¶¶ 17-18. In July 2015, Dr. Rosner performed a decompression surgery on Mr. Milligan at Park Ridge. *Id*. at ¶ 52. Mr. Milligan suffered several

---

[1] A Chiari malformation is a condition in which brain tissue extends into an individual's spinal canal.

complications following the surgery. *Id*. at ¶ 63. These complications lead Mr. Milligan to undergo several additional surgeries in Florida to correct the issues caused by Dr. Rosner's surgery. *Id*. at ¶¶ 10, 64-66.

### B. Procedural History

In August 2016, Mr. Milligan filed a complaint against State Farm Mutual Automobile Insurance Company (State Farm) in state court. Doc. 2. Mr. Milligan alleged that at the time of the accident he was insured under an automotive insurance policy (the Policy) issued by State Farm. *Id*. at ¶ 6. Mr. Milligan seeks to recover under the Policy's uninsured/underinsured motorist provision. *Id*. at ¶ 7.

In October 2016, State Farm removed the case to this Court. Doc. 1.

In January 2018, State Farm filed a third party complaint against Dr. Rosner and Park Ridge. Doc. 48 (Third-Party Complaint). State Farm alleged that the surgery Dr. Rosner performed on Mr. Milligan was unnecessary and "amounted to medical negligence because his performance of the surgery was something that a reasonably careful physician would not do under like circumstances." *Id*. at ¶¶ 60, 68. Further, State Farm alleged that in light of Dr. Rosner's prior suspensions stemming from the performance of unnecessary surgeries Park Ridge negligently "fail[ed] to adequately investigate the credentials of Dr. Rosner and/or [by] repeatedly granting him the credentials to perform surgery at Park Ridge Hospital." *Id*. at ¶ 68. Thus, in the event State Farm is found liable for the damages stemming from the accident, including the damages State Farm alleges were caused by Dr. Rosner's and Park Ridge's negligence, State Farm asserted claims of common law indemnification and statutory contribution against Dr. Rosner and Park Ridge. *Id*. at 14-21.

### C. The Motion to Dismiss

Park Ridge filed a timely motion to dismiss arguing that the Third-Party Complaint should be dismissed for lack of personal jurisdiction and failure to state a claim. Doc. 62 (Motion). In support of the Motion, Park Ridge filed an affidavit from its Vice Present of Medical Affairs and Chief Medical Officer, Dr. Carlo Mainardi. Doc. 62-1.

State Farm filed a timely response in opposition arguing that the Court could exercise personal jurisdiction over Park Ridge and that it has not failed to state any claims against Park Ridge. Doc. 66 at 1-15. In support of its response, State Farm filed several publically available documents it claimed supported the Court's personal jurisdiction over Park Ridge. *Id.* at 16-66.

## II. Analysis

The Court's ability to exercise personal jurisdiction over Park Ridge presents a threshold issue in this matter. *See Madara v. Hall*, 916 F.2d 1510, 1514 n.1 (11th Cir. 1990) (explaining that the district court should have ruled on jurisdictional issues before ruling on request to dismiss for failure to state a claim). Thus, the undersigned will begin by addressing whether the Court has personal jurisdiction over Park Ridge.

A federal court sitting in diversity undertakes a two-step inquiry in determining whether it can exercise personal jurisdiction over a nonresident defendant. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the Court must determine whether the forum state's long-arm statute (here, Florida's statute) provides a sufficient basis for personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). Second, if the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court "must determine whether sufficient minimum contacts exist between the defendant[ ]

and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id*. (internal quotation omitted).

A plaintiff claiming that the Court has personal jurisdiction over a nonresident defendant bears the initial burden of alleging sufficient facts in the complaint to establish a *prima facie* case of personal jurisdiction over the defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A *prima facie* case is established if plaintiff alleges enough facts to withstand a motion for directed verdict or judgment as a matter of law. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If the defendant challenges jurisdiction by submitting affidavits containing specific averments contradicting the plaintiff's allegations in support of personal jurisdiction, the burden shifts back to the plaintiff to produce evidence supporting the existence of personal jurisdiction. *United Techs.*, 556 F.3d at 1274. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

### A. Florida's Long-Arm Jurisdiction

State Farm argues that the Court has both specific and general jurisdiction over Park Ridge. Doc. 66 at 9. The reach of Florida's long-arm statute "is a question of Florida law," and, thus, the Court is required to apply the statute "as would the Florida Supreme Court." *United Techs.*, 556 F.3d at 1274. "Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts." *Id*. "Florida's long-arm statute is to be strictly construed." *Sculptchair*, 94 F.3d at 627

### 1. Specific Jurisdiction

State Farm argues that the Court has specific jurisdiction over Park Ridge pursuant to Florida Statute § 48.193(1)(a)(1) and (1)(a)(6)(a). Doc. 66 at 6-7, 10. The undersigned will address the application of each provision in turn.

#### a. Florida Statute § 48.193(1)(a)(1).

State Farm argues that the Court has personal jurisdiction over Park Ridge pursuant to section 48.193(1)(a)(1), which states:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

*Id*. "In order to establish that a defendant is carrying on business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal quotations omitted). This analysis involves the consideration of several non-dispositive factors, including: 1) the presence and operation of an office in Florida; 2) the possession and maintenance of a license to do business in Florida; 3) the number of Florida clients served; and 4) the percentage of overall revenue gleaned from Florida clients. *Id*. Further, there must be some nexus or connection between the claims asserted against defendant and the business defendant conducts in Florida. *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 971 (11th Cir. 1986).

State Farm essentially argues that the Court can exercise personal jurisdiction over Park Ridge under section 48.193(1)(a)(1) because Park Ridge in engaged in a "business venture" in

Florida through its membership in the "Adventist Health System/Sunbelt Health Care Corporation" (Adventist Health System)[2], which is incorporated and headquartered in Florida. Doc. 66 at 10. The undersigned finds State Farm's argument unpersuasive for several reasons.

First, the evidence before the Court demonstrates that Park Ridge does not conduct business in Florida. Dr. Mainardi averred that Park Ridge is incorporated in North Carolina, has its principle place of business in North Carolina, does not operate any facilities in Florida, does not conduct any business in Florida, and does not engage in any solicitation or provide any services in Florida. Doc. 62-1 at ¶¶ 5-7, 15. Further, there is no evidence that Park Ridge is licensed to conduct business in Florida, no evidence about the number of Florida citizens Park Ridge has served, and no evidence about the overall revenue Park Ridge has gleaned from Florida clients. The evidence provided by Park Ridge coupled with the lack of evidence concerning licensure and services provided to Florida residents support a finding that Park Ridge does not conduct business in Florida.

State Farm does not contest the veracity of Dr. Mainardi's affidavit, *see* Doc. 66 at 7, but, instead, argues that Park Ridge's membership in the Adventist Health System is sufficient to demonstrate that Park Ridge conducts business in Florida. *Id*. at 9-10. State Farm, however, does not cite any authority concluding that a foreign corporation's membership in a network, such as the Adventist Health System, is, in and of itself, sufficient to establish that the foreign corporation conducts business in the network's home state. *See* Doc. 66. Further, State Farm does not provide any specific argument why the Court, in the absence of any authority supporting State Farm's position, should conclude that Park Ridge's membership in the Adventist Health System is

---

[2] The Adventist Health System is "a family of 45 exceptional, faith-based hospitals across the country that deliver care and services that best meet the needs of their communities." Doc. 66 at 22.

sufficient to find that Park Ridge conducts business in Florida. *See id*. The lack of authority and argument undermines State Farm's position. The undersigned recognizes that Park Ridge's membership in the Adventist Health System may possibly suggest that Park Ridge conducts some business in Florida. State Farm, however, has not provided any specific evidence concerning the nature and scope of the business Park Ridge may conduct in Florida by virtue of its membership in the Adventist Health System. *See id*. Thus, there is no way for the Court to determine whether and to what extent Park Ridge conducts business in Florida. The evidence before the Court, namely Dr. Mainardi's affidavit, establishes that Park Ridge does not conduct business in Florida to the extent required to satisfy section 48.193(1)(a)(1).

Second, even if the Court were to find that Park Ridge conducted business in Florida, State Farm has failed to demonstrate any connection between the injury Mr. Milligan suffered as a result of the unnecessary surgery performed by Dr. Rosner and the business Park Ridge allegedly conducted in Florida. Dr. Mainardi averred that Park Ridge has several health committees that address appointment and reappointment of medical staff and that those committees sit in North Carolina. Doc. 62-1 at ¶¶ 11-12, 14. Further, Dr. Mainardi averred that the appointment and reappointment of Dr. Rosner was conducted by Park Ridge's health committees in North Carolina. *Id*. at ¶ 18. State Farm does not contest the veracity of the foregoing averments, nor does it offer any evidence (other than Park Ridge's membership in the Adventist Health System) that determinations concerning the appointment and reappointment of medical staff at Park Ridge, including Dr. Rosner, are made in Florida or influenced or controlled by the Adventist Health System in Florida. *See* Doc. 66. Therefore, the undersigned finds that State Farm has failed to demonstrate any connection between the injury Mr. Milligan suffered as a result of the unnecessary surgery performed by Dr. Rosner and the business Park Ridge allegedly conducted in Florida.

In light of the foregoing, the undersigned finds that State Farm has failed to demonstrate that the Court has personal jurisdiction over Park Ridge pursuant to section 48.193(1)(a)(1).

### b. Florida Statute § 48.193(1)(a)(6)(a)

State Farm also argues that the Court has personal jurisdiction over Park Ridge pursuant to section 48.193(1)(a)(6)(a), which states:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> a. The defendant was engaged in solicitation or service activities within this state[.]

*Id.* This provision "applies only when a defendant's out of state actions cause personal injury or damage to physical property in the State of Florida." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (construing predecessor to section 48.193(1)(a)(6)(a)) (citing *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So.2d 992, 994 (Fla. 1987)). Further, there must be some connection between plaintiff's alleged injury and defendant's solicitation and service activities in Florida. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 894 (11th Cir. 1983).

State Farm essentially argues that the Court can exercise personal jurisdiction over Park Ridge under section 48.193(1)(a)(6)(a) because the injuries Mr. Milligan suffered as a result of Park Ridge's actions largely occurred in Florida. Doc. 66 at 10 (citing *Benedict v. Gen. Motors*

*Corp.*, 142 F. Supp. 2d 1330 (N.D. Fla. 2001)).  The undersigned finds State Farm's argument unpersuasive for several reasons.

First, State Farm's apparent reliance on *Benedict* is misplaced.  The plaintiff in *Benedict* asserted a claim of patent infringement against the defendants.  *Benedict*, 142 F. Supp. 2d at 1331.  The plaintiff brought suit in Florida, and one of the defendants moved to dismiss for lack of personal jurisdiction.  *Id*.  The court found that it could exercise jurisdiction over the defendant under the provision of Florida's long-arm statute that "provides jurisdiction over a defendant who commits a tortious act in another state that causes injury in Florida[.]"  *Id*. at 1332, 1335 (citing Fla. Stat. § 48.193(1)(b)).  The court, however, did not consider section 48.193(1)(a)(6)(a), which, at the time *Benedict* was decided, was section 48.193(f)(1).  *See id*.  State Farm does not cite or discuss section 48.193(1)(b) but, instead, cites, quotes, and discusses section 48.193(1)(a)(6)(a).  Doc. 66 at 6-7, 10.  Thus, in light of State Farm's arguments, the undersigned finds *Benedict* inapplicable in this matter.

Second, the injury Mr. Milligan suffered as a result the unnecessary surgery performed by Dr. Rosner occurred at Park Ridge's facility in North Carolina.  The fact that Mr. Milligan returned to Florida and experienced complications from that surgery in Florida does not support the application of section 48.193(1)(a)(6)(a) in this case.  *See Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1326 (M.D. Fla. 2017) (finding that the court lacked personal jurisdiction over defendants under section 48.193(1)(a)(6)(a) where plaintiffs received treatment in Florida for injuries they suffered in a plane crash in South Carolina); *Hesterly v. Royal Caribbean Cruises, Ltd.*, 2008 WL 516495, *9 (S.D. Fla. Feb. 25, 2008) (finding that the court lacked personal jurisdiction over doctor defendants under the predecessor of section 48.193(1)(a)(6)(a) where the injuries and initial medical treatment occurred outside of Florida); *Price v. Point Marine, Inc.*, 610

So.2d 1339, 1342 (Fla 1st DCA 1992) (finding that the court lacked personal jurisdiction under the predecessor of section 48.193(1)(a)(6)(a) where the plaintiff died in Florida from injuries he suffered while on a ship off the coast of Texas). Thus, the undersigned finds that State Farm has failed to satisfy the first element of section 48.193(1)(a)(6)(a).

Third, even if the Court were to find that State Farm satisfied the first element of section 48.193(1)(a)(6)(a), State Farm has failed to demonstrate any connection between the injury Mr. Milligan suffered as a result of the unnecessary surgery performed by Dr. Rosner and any solicitation or service Park Ridge allegedly conducted in Florida. Dr. Mainardi averred that Park Ridge "does not engage in any solicitation or service activities within the State of Florida." Doc. 62-1 at ¶ 15. State Farm argues in its response to the Motion that Park Ridge was "involved in solicitation or service activities . . . in Florida," Doc. 66 at 10, but fails to provide any evidence demonstrating that Park Ridge or its agents solicit any business in Florida or perform any services in Florida. Thus, Dr. Mainardi's averment is uncontested. Therefore, the undersigned finds that State Farm has failed to demonstrate any connection between the injury Mr. Milligan suffered as a result of the unnecessary surgery performed by Dr. Rosner and any solicitation or service that Park Ridge allegedly conducted in Florida.

In light of the foregoing, the undersigned finds that State Farm has failed to demonstrate that the Court has personal jurisdiction over Park Ridge pursuant to section 48.193(1)(a)(6)(a).

**2. General Jurisdiction**

State Farm also argues that the Court has personal jurisdiction over Park Ridge pursuant to the general jurisdiction provision of the Florida long-arm statute. Doc. 66 at 9-10.

The general jurisdiction provision of the Florida long-arm statute states:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the

> jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). This provision provides personal jurisdiction over a defendant who is engaged in "substantial and not isolated activity" within Florida whether or not the claim against defendant arises from that activity. *Snow*, 450 F.3d at 1318. The requirement that the defendant be engaged in "substantial and not isolated activity" within Florida has been interpreted by Florida courts to mean "continuous and systematic general business contact" with Florida, a term used by the Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) to determine whether general jurisdiction was permissible under the Due Process Clause. *Id*. at 1318-19 (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999)). Thus, "the reach of [section 48.193(2)] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citing *Woods*, 739 So.2d at 620). An exercise of general jurisdiction comports with due process when a defendant's contacts with Florida are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1295 (S.D. Fla. 2009) (explaining that in order for a defendant to fall within Florida's general jurisdiction, a defendant's contacts "must be so extensive to be tantamount to [the] defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in the forum state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world.").

State Farm essentially argues that Park Ridge was engaged in "substantial and not isolated activity" within Florida through its membership in the Adventist Health System and, thus, is

subject to the Court's general jurisdiction. Doc. 66 at 10. The undersigned finds State Farm's argument unpersuasive.

The evidence before the Court demonstrates that Park Ridge does not have the continuous and systematic contacts with Florida necessary to subject Park Ridge to Florida's general jurisdiction. Dr. Mainardi averred that Park Ridge is incorporated in North Carolina, has its principle place of business in North Carolina, does not operate any facilities in Florida, does not conduct any business in Florida, and does not engage in any solicitation or provide any services in Florida. Doc. 62-1 at ¶¶ 5-7, 15. State Farm does not contest the veracity of these averments, *see* Doc. 66 at 7, which strongly weigh against a finding that Park Ridge has continuous and systematic contacts with Florida.

Yet State Farm argues that Dr. Mainardi's affidavit is "carefully crafted to exclude Park Ridge's strong ties to Florida[.]" *Id*. The ties State Farm refers to relate to Park Ridge's membership in the Adventist Health System and treatment of Mr. Milligan. Specifically, State Farm points to the following evidence concerning Park Ridge's membership in the Adventist Health System:

- A 1989 amendment to Park Ridge's charter, which states that one of the general purposes of Park Ridge is "[t]o use the assets of [Park Ridge] and the proceeds, income, rents, issues and profits derived from any property of [Park Ridge] . . . for aid and assistance to and the benefit of Adventist Health System/Sunbelt Health Care Corporation, a Florida not-for-profit corporation" and other North Carolina corporations. *Id*. at 16-17.

- The 1989 amendment to Park Ridge's charter was notarized in Florida. *Id*. at 20.

- The articles of incorporation Adventist Health System included in its "Application for Amended Certificate of Authority" it filed with North Carolina in 1995 state that one of its general purposes is "[t]o support nonprofit corporations for which Adventist Health System/Sunbelt Health Care Corporation is the sole member including . . . [Park Ridge.]" *Id*. at 29, 34.

- A screen shot of Park Ridge's website indicating that it is a member of the Adventist Health System. *Id*. at 22.

- A screen shot of Adventist Health System's website indicating that Park Ridge is one of is member hospitals. *Id*. at 48, 63.

- The sharing of a registered agent, whose address is in North Carolina. *Id*. at 21, 28.

State Farm essentially argues that this evidence demonstrates that Adventist Health System acts as Park Ridge's parent corporation and that this relationship and Park Ridge's treatment of Mr. Milligan, a Florida resident, establishes that Park Ridge has strong ties to Florida. *Id*. at 9-10.

In its response to the Motion, State Farm appears to compare this case to cases involving the exercise of personal jurisdiction over a foreign parent corporation based on the relationship between the parent corporation and its subsidiary doing business in the forum state. *See* Doc. 66 at 9 (citing *Meier*, 288 F. 3d 1264). A foreign parent corporation is generally not subject to the jurisdiction of a forum state merely because its subsidiary is doing business in the forum state. *Meier*, 288 F.3d at 1272. A court may, however, "extend jurisdiction to any foreign corporation where the affiliated domestic corporation manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation." *Id*. at 1273 (internal quotations omitted). Relying on this legal principle, State Farm suggests that the principle also applies in cases where the domestic parent corporation is claimed to control the foreign subsidiary. The undersigned is not persuaded, especially given State Farm's failure to provide any argument or cite any authority supporting its interpretation. Therefore, it does not appear that the Adventist Health System's alleged control over Park Ridge would permit the Court to exercise general jurisdiction over Park Ridge.

Further, even if the Court assumed that a domestic parent corporation's control over a foreign subsidiary could subject the foreign subsidiary to general jurisdiction in the forum state,

State Farm has failed to demonstrate that the Adventist Health System exerted any control over Park Ridge. Dr. Mainardi's affidavit establishes that Park Ridge controls many of its essential functions, such as the appointment and reappointment of medical staff. *See* Doc. 62-1. The evidence to which State Farm points in its response to the Motion does not contradict Dr. Mainardi's affidavit. That evidence merely establishes that Park Ridge is a member of the Adventist Health System and does not provide any insight into the nature and scope of the relationship between Park Ridge and the Adventist Health System.[3] The degree of control is crucial in determining the extent of Park Ridge's contact with Florida through its membership in the Adventist Health System. Thus, the lack of evidence concerning the nature and scope of the relationship between Park Ridge and the Adventist Health System prohibits the Court from determining whether the Adventist Health System controls Park Ridge and to what extent that control ties Park Ridge to Florida. Therefore, State Farm has failed to demonstrate that Park Ridge has continuous and systematic general business contact within Florida by virtue of its membership in the Adventist Health System.

The only ties Park Ridge arguably has to Florida are its membership in the Adventist Health System, which is based in Florida, and its treatment of Mr. Milligan, a Florida resident. Those ties to Florida fall far short of establishing that Park Ridge has continuous and systematic general business contact within Florida. So the undersigned finds that State Farm failed to demonstrate that the Court has personal jurisdiction over Park Ridge pursuant to section 48.193(2).

---

[3] It appears that State Farm relies heavily on the general purpose statements contained in Park Ridge's and the Adventist Health System's corporate documents. These documents, again, simply demonstrate that Park Ridge is a member of the Adventist Health System. Doc. 66 at 17, 34. Thus, the undersigned finds that the corporate documents State Farm relies on do not provide the type of information necessary to demonstrate that the Adventist Health System exerts significant control over Park Ridge or that the two corporations are, in essence, indivisible.

### B. Due Process

The lack of specific or general jurisdiction over Park Ridge ends the Court's personal jurisdiction inquiry. Thus, the Court need not reach the due process inquiry. *Hinkle*, 268 F. Supp.3d at 1327 (citing *Mazer*, 556 F.3d at 1275 n.15). Nevertheless, because this is a Report and Recommendation and the due process inquiry may factor into the Court's analysis of any objections hereto, the undersigned will briefly address whether exercising personal jurisdiction over Park Ridge would offend the Due Process Clause of the Fourteenth Amendment.

The due process analysis involves a two-part inquiry: the Court first considers whether the defendant engaged in minimum contacts with the state of Florida and then considers whether the exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *Madara*, 916 F.2d at 1515-16.

First, Park Ridge does not have sufficient minimum contacts with Florida for the reasons already discussed in the foregoing section of this Report. To possess minimum contacts with a forum state, a defendant must have performed "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts" with the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted).

The uncontroverted evidence presented by Park Ridge establishes that it is incorporated and headquartered in North Carolina and it controls most, if not all, of its essential functions, including those giving rise to the claims against it in this action, i.e., the appointment and reappointment of Dr. Rosner. Further, Park Ridge's membership in the Adventist Health System

and treatment of Mr. Milligan do not equate to purposeful availment of conducting activities in Florida such that Park Ridge would anticipate being haled into court in Florida. *See Pelton v. Methodist Hosp.*, 989 F. Supp. 1392, 1394-95 (N.M.D. 1997) (finding Texas hospital's treatment of New Mexico citizens and single employment advertisement in New Mexico was insufficient to establish that the Texas hospital had sufficient minimum contacts with New Mexico).

Second, the exercise of personal jurisdiction over Park Ridge would offend traditional notions of fair play and substantial justice. The Court considers the following factors in determining whether exercising personal jurisdiction over a defendant would comport with traditional notions of fair play and substantial justice: 1) the burden on the defendant; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (citing *Burger King*, 471 U.S. at 466).

In its response to the Motion, State Farm does not even address whether exercising personal jurisdiction over Park Ridge would offend traditional notions of fair play and substantial justice. *See* Doc. 66 at 6-11. Thus, State Farm has arguably conceded that exercising personal jurisdiction over Park Ridge would offend traditional notions of fair play and substantial justice. Notwithstanding State Farm's lack of argument, the undersigned finds that litigating this case would burden Park Ridge, which has been shown to operate exclusively in North Carolina. Further, the undersigned finds that North Carolina has a greater interest in this case than Florida since the negligent acts and initial injury giving rise to the Third-Party Complaint occurred in North Carolina. The undersigned also finds that litigating the claims against Park Ridge in Florida

would not necessarily be the most efficient resolution of the case since the primary issue in this case is whether State Farm is liable under the Policy to cover all of Mr. Milligan's damages. So the undersigned finds that State Farm has failed to demonstrate that exercising personal jurisdiction over Park Ridge would not offend the traditional notions of fair play and substantial justice.

### III.     Conclusion

In sum, the undersigned finds that State Farm failed to demonstrate that the Court has personal jurisdiction over Park Ridge. Thus, the claims against Park Ridge are due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). This determination obviates the need to address Park Ridge's argument to dismiss for failure to state a claim pursuant Federal Rule of Civil Procedure 12(b)(6). *See Madara*, 916 F.2d at 1514 n.1. Thus, Park Ridge's argument to dismiss for failure to state a claim is due to be denied as moot.

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 62) be **GRANTED** to the extent it requests the claims against Park Ridge be dismissed for lack of personal jurisdiction; and

2. The Motion (Doc. 62) be **DENIED as moot** in all other respects.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 15, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy